The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

HEIDI CHIAT,

Plaintiff,

v.

STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, MARCY FOMIN, LINDA TOWNSEND-WHITHAM, TANYA KEENAN, SHAWN SIVLY, CHRISTIEN STORM, DARLA ABBAS, THERESA BURTON, ROXANNE KAR AND ANTHONY KAR,

Defendants.

NO. 2:18-cv-01142-RSL

DSHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIM

NOTE ON MOTION CALENDAR: AUGUST 28, 2020

## I. INTRODUCTION

Plaintiff Heidi Chiat's remaining claim is for abuse of process arising from an April 2015 investigation by Child Protective Services ("CPS") of her treatment of her minor children. Ms. Chiat's remaining claim should be dismissed with prejudice because: (1) she was not subjected to any legal process; (2) she has no evidence that the CPS investigation sought a secondary objective; and (3) she has no damages. Additional discovery cannot cure these legal defects. The State of Washington, the Department of Children Youth and Families, formerly

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

known as the Department of Social and Health Services ("DSHS"), respectfully requests dismissal of Ms. Chiat's remaining claim for abuse of process in its entirety with prejudice.

## II. STATEMENT OF FACTS

### A. The 2015 referral for investigation cannot support any alleged liability.

Ms. Chiat's remaining claim arises from an April 2015 CPS investigation that was resolved in less than two weeks. During the evening of April 8, 2015, Linda Townsend-Whitham, a DSHS social worker, brought KC to her mother's apartment to return her to Ms. Chiat's custody as the dependency court had ordered earlier that day.[1] The timing of KC's return to Ms. Chiat's custody was the same as the timing of Ms. Chiat's son, JBC, only four months earlier.[2]

Ms. Chiat's unattended 3-year-old son, JBC, opened the apartment door; and, it took several minutes for Ms. Chiat to join him.[3] Ms. Chiat would not let Ms. Townsend-Whitham into the apartment.[4] However, Ms. Townsend-Whitham observed that Ms. Chiat's apartment was a "disaster," with documents, clothes, blankets and containers all over the room.[5] Ms. Townsend-Whitham considered it "a safety issue" for a toddler of JBC's age.[6]

Ms. Chiat was unprepared for her daughter's return.[7] When Ms. Townsend-Whitham offered to retain custody of KC, Ms. Chiat adamantly refused.[8] After the encounter, Ms. Townsend-Whitham remained concerned for Ms. Chiat's 3-year-old because of the potentially hazardous state of the apartment, Ms. Chiat's lax supervision of JBC and her lack

---

[1] Declaration of A. Janay Ferguson, Ex. 1, p. 3 (Intake). All exhibits are taken from the Declaration of A. Janay Ferguson in Support of Summary Judgment on Remaining Claim.
[2] Ex. 2, p.18 (Chiat Dep., p. 72:13-17).
[3] Ex. 1, p. 3 (Intake, p. 2).
[4] *Id.*
[5] *Id.*
[6] Ex. 5, p. 34 (Investigative Assessment, p. 4).
[7] Ex. 3, p. 22 (Chiat Ans. Interrog. No. 6, p. 14:19-23).
[8] Ex. 2, p. 12 (Chiat Dep., p. 49:16-23).

DSHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIM
NO. 2:18-cv-01142-RSL

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

of preparation for KC's return.[9] On April 10, Ms. Townsend-Whitham, as required by Washington statute, reported her concerns to Child Protective Services (CPS).[10]

CPS determined that sufficient factors existed to warrant investigation.[11] The investigation was assigned to Nicole Gorman.[12] On April 13, as mandated by Washington statute, Ms. Gorman tried to conduct in-person, face-to-face interviews with KC and JBC.[13] Ms. Chiat refused to allow Ms. Gorman entry into the apartment or the opportunity to interview the children.[14] Ms. Chiat admits that immediately after Ms. Gorman attempted to interview her children, she "sped to safety in Portland, Oregon," only returning to Washington on the advice of her publically appointed lawyer, Marci Comeau.[15] That same day, Ms. Gorman requested police assistance to obtain an in-person child interview, but was not successful in gaining access.[16] No warrant, subpoena, or court intervention occurred.[17]

On April 16, Ms. Gorman interviewed Ms. Chiat with Ms. Comeau present.[18] Ms. Gorman also interviewed KC, who reported she felt safe and was receiving enough food.[19] On April 22, after examining the apartment, interviewing Ms. Townsend-Whitham, gathering information related to KC's school attendance and healthcare, and assessing the potential risk of neglect,[20] Ms. Gorman determined that there was "not enough evidence to substantiate the allegation of negligent treatment/maltreatment at this time."[21] On April 22, the investigation

---

[9] Ex. 1, p. 3 (Intake, p. 2).
[10] *Id.*, p. 2 (Intake, p. 1).
[11] *Id.*, p. 5 (Intake, p. 4).
[12] *Id.*, p. 2 (Intake, p. 1).
[13] Ex. 3, pp. 23-24 (Chiat Ans. Interrog. No. 6, pp. 15:24—16:16).
[14] *Id.; see also* Ex. 2, p.14 (Chiat Dep., pp. 58:17—59:25).
[15] Ex. 3, pp. 23-24 (Chiat Ans. Interrog. No. 6, p. 15:24—16:16).
[16] *Id.*
[17] *See id.*
[18] Ex. 5, p. 36 (Investigative Assessment, p. 3).
[19] *Id.*
[20] Ex. 4, pp. 28-31 (Risk Assessment, pp. 1-4).
[21] Ex. 5, p 33 (Investigative Assessment, p. 1).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

closed without any action.[22] Ms. Gorman sent Ms. Chiat notification that the investigation had concluded by regular mail that same day.[23]

However, Ms. Chiat remained distraught, and by her own account, stayed in "hiding" from April 16 through June 29, only returning home on Sundays when she believed she would be "safe."[24] During this period, it is not clear what additional efforts may have been made to communicate the formal determination of the investigation to Ms. Chiat. On June 29, 2015, DSHS transmitted the finding to Ms. Chiat by certified mail;[25] and, she received it in July 2015.[26]

Ms. Chiat speculates that Ms. Townsend-Whitham must have been pressured to institute a second investigation.[27] In addition, Ms. Chiat assumes that DSHS somehow knew of or facilitated what she describes as efforts by Roxanne and Tony Kar, KC's former foster parents, to contact KC after her dependency ended.[28] Finally, Ms. Chiat alleges that DSHS intentionally delayed formal notice regarding the investigation result.[29]

Ms. Chiat has no evidence to support any of these suspicions. More importantly, she has no evidence that she was ever served with any legal process during the investigation, that any DSHS social worker at any time during the investigation asked her to do anything or to refrain from doing anything to secure an "Unfounded" determination, or that any aspect of the investigation was delayed. Finally, Ms. Chiat has no evidence of any attorney fees paid to her public defender, who was present for her April 16 interview.

---

[22] Ex. 6, p. 39 (Gorman letter).

[23] *Id.*

[24] Ex. 3, p. 25 (Chiat Ans. Interrog. No. 6, p. 77:3-6); *see also* Ex. 2, pp.16-17 (Chiat Dep., pp. 60:22-24 (live on farm); 61:14 (in hiding)).

[25] Ex. 7, pp. 41-42 (Marr letter).

[26] Ex. 8, p. 44 (USPS Tracking).

[27] Ex. 2, p. 13 (Chiat Deposition, p. 52:19-24).

[28] Ex. 3, p. 23(Chiat Ans. Interrog. No. 6, p. 15:6-13).

[29] Ex. 2, p. 16 (Chiat Deposition, p. 60:22-24).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**B. Plaintiff's remaining claim is for abuse of process arising from the April 2015 CPS investigation.**

On April 3, 2020, the Court dismissed the majority of Ms. Chiat's claims, but did not dismiss her allegation that DSHS abused process by instituting a second investigation of alleged child abuse and/or neglect in April 2015.[30] The Court specifically identified the necessary legal elements of the remaining claim in its Order.[31] Ms. Chiat can support none of them. Her remaining claim fails on the facts and the law. It should be dismissed in its entirety with prejudice.

## III. LEGAL ARGUMENT

**A. Summary judgment of dismissal must be granted when the material facts do not demonstrate any valid cause of action.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[32] The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party."[33] Nevertheless, the nonmoving party must do more than simply show "some metaphysical doubt as to the material facts."[34] Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."[35] Courts properly "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."[36] A motion response that obfuscates rather than promotes an understanding of the facts, does not create an issue of fact preventing summary judgment.[37]

---

[30] Dkt. No. 57, April 3, 2020 Order, p. 8:3-13.

[31] Id., p. 11, n. 9.

[32] Fed. R. Civ. P. 56(a).

[33] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[34] *Id.*, at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted).

[35] *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

[36] *Richards v. Combined Ins. Co*., 55 F.3d 247, 251 (7th Cir.1995); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992) ("[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden-for example, by remaining silent-its opportunity is waived and its case wagered.").

[37] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**B. Ms. Chiat's claim for abuse of process can be decided without further discovery because the allegedly "vexatious" basis of litigation is not an element of the claim.**

Additional discovery regarding the alleged motives of DSHS employees cannot prevent summary judgment for three reasons. First, motivation—even a malicious motivation—will not help Ms. Chiat establish the tort's elements. Second, DSHS had a statutory obligation to report and to investigate. Finally, as discussed below, Ms. Chiat cannot, as a matter of law, make out the most basic element of the tort—the issuance of legal process.

**1. Malicious motive is not an element of the tort of abuse of process.**

In Washington, the elements of the seldom pursued tort known as "abuse of process" are: (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process; (2) an act in the use of legal process not proper in the regular prosecution of the proceedings; and (3) harm proximately caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 198 Wn. App. 464, 477, 394 P.3d 1018, 1024-25 (2017). The crucial inquiry is whether the judicial system's process, after having been made available to secure the presence of the opposing party, has been misused to achieve another, inappropriate end.[38] Institution of a legal proceeding from a malicious motive does not constitute an abuse of process.[39] Even the filing of a baseless or vexatious lawsuit is not misusing legal process, and no liability attaches if nothing occurs in the litigation "other than carrying it to its regular conclusion."[40] For this reason, even if the CPS investigation was instituted for an improper motive, and DSHS denies there is any truth to this allegation, it would not help Ms. Chiat prove her remaining claim. Improper motive, without more, is not a legal element of the tort.

---

[38] *See Mark v. Williams*, 45 Wn. App. 182, 192, 724 P.2d 428, 434 (1986) (dismissing claim in the absence of evidence that legal process was improperly used in the legal proceedings to accomplish a purpose for which the proceedings were not designed).

[39] *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1232 (W.D. Wash. 2015) (declining to decide whether tort applies to administrative proceedings to enforce United States immigration law).

[40] *Batten v. Abrams*, 28 Wn. App. 737, 749, 626 P.2d 984 (1981) ("there must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit.").

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

Ms. Chiat's purpose for discovery, however, is exclusively focused on the allegedly improper motives of DSHS employees for conducting the April 2015 investigation.[41] Ms. Chiat's adamant belief in DSHS's wrongful motive is, as she admits, *supposition*.[42] However, her response to the April 2015 investigation demonstrates why no amount of discovery will produce evidence to support her claim. This is because Ms. Chiat was so wary of DSHS social workers in April 2015 that she would not allow Ms. Townsend-Whitham into the apartment to assess whether it was a safety hazard;[43] would not allow Ms. Gorman to interview her children on April 13, 2015;[44] would not talk to Ms. Gorman without her public attorney present;[45] and, spent much of the time between April 13 and June 29, 2015, "in hiding."[46] Thus, no social worker had the opportunity to interact with her to articulate, much less pursue, a secondary objective in the investigation.

Ms. Chiat cannot demonstrate any irregularity in the investigation, which proceeded according to statutory requirements and resolved in roughly two weeks. At most, Ms. Chiat can show there was a delay in her receipt of a certified letter with the formal investigative result, which she concludes was harassing because of her subjective fear.[47] Even if there was a delay in the transmission of the certified letter (which DSHS does not concede was material), Ms. Chiat cannot account for Ms. Gorman's April 22, 2015, letter by regular mail informing her that the investigation had concluded.[48] And, again, this delay does not show any secondary objective in the investigation.

---

[41] *See, e.g.,* Pl. Mot. Re. Disc. & 10 Points, p. 4, ¶ 3 (Dkt. No. 84)("Plaintiff was merely seeking the motivations and psychological grounding of the Defendants.").

[42] Ex. 2, p. 13 (Chiat Deposition, p. 52:19-24).

[43] Ex. 1, p. 3 (Intake, p. 2).

[44] Ex. 2, p. 14 (Chiat Deposition, p. 58:6-11).

[45] Ex. 5, p 35 (Investigative Assessment, p. 3).

[46] Ex. 3, p. 25 (Chiat Ans. Interrog. No. 6, p. 17:3-6).

[47] Ex. 2, p. 14 (Chiat Deposition, p. 58:6-11); see also Ex. 8 (showing certified mail delivery on July 11).

[48] Ex. 6 (Gorman letter).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**2. Washington statute compelled DSHS employees to make and to investigate a possible instance of child abuse and/or neglect.**

DSHS is insulated from Ms. Chiat's allegations of an improper motive for a second reason: Washington statute compelled both the report of potential neglect and the CPS investigation. Ms. Townsend-Whitham was a "mandatory reporter," that is she had a statutory duty to report potential child abuse and/or neglect. Similarly, Ms. Gorman had a statutory duty to investigate that report.

The Washington Legislature has a long history of seeking to protect children. The effective statute during 2015 documented that the Legislature found that "instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents . . ." required "the reporting of such cases to the appropriate public authorities."[49] Further, the Legislature concluded "that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children."[50] Significantly, "[w]hen the child's physical or mental health is jeopardized, or the safety of the child conflicts with the legal rights of a parent, custodian, or guardian, the health and safety interests of the child should prevail."[51]

Accordingly, *any* "employee of the department of social and health services" who "has reasonable cause to believe that a child has suffered abuse or neglect . . . *shall* report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040."[52] The statute mandates that "[t]he report must be made at the first opportunity, but in no case longer than forty-eight hours after there is reasonable cause to believe that the child has suffered abuse or neglect."[53]

---

[49] Wash. Code Rev. § 26.44.010 (2015).
[50] *Id.*
[51] Wash. Code Rev. § 26.44.010 (2015).
[52] Wash. Code Rev. § 26.44.030 (2015) (emphasis added).
[53] Wash. Code Rev. § 26.44.030(1)(g) (2015).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

DSHS uses a method of assessment to determine the need to investigate "based on an array of factors that may include the presence of: [i]mminent danger, level of risk, number of previous child abuse or neglect reports, or other presenting case characteristics, such as the type of alleged maltreatment and the age of the alleged victim."[54] If an allegation of potential abuse or neglect is made in a case where DSHS has a prior founded report of abuse or neglect with regard to a member of the household within three years of receipt of the referral, it *must* be investigated.[55]

**3. Ms. Chiat's claim fails as a matter of law because a CPS investigation is not legal process.**

A CPS investigation is not legal process. In Washington, the tort of abuse of process applies to "legal process, whether criminal or civil." *Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 807, 699 P.2d 217, 221 (1985) (finding that an abuse of process claim concerning proceedings before the National Labor Relations Board was not cognizable under Washington law because there was "no process issued in Washington courts"). In other words, a judicial proceeding must be misused to accomplish an act for which the process issued in the proceeding was not designed.[56] The crucial inquiry in abuse of process claims is therefore "whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end."[57]

Ms. Chiat was not subject to legal process at any time during the April 2015 CPS investigation. Her ability to flee Washington without legal consequence, her ability to refuse initial efforts to interview her children, and the administrative nature of the CPS investigation

---

[54] Wash. Code Rev. § 26.44.030(10)(b)(i) (2015).

[55] Wash. Code Rev. § 26.44.030(10)(c) (2015).

[56] *Sea-Pac*, 103 Wash.2d at 806, 699 P.2d 217 (quoting *Fite v. Lee*, 11 Wn. App. 21, 27, 521 P.2d 964, 968 (1974); Restatement (Second) of Torts § 682, at 474 (Am. Law Inst. 1977) ); *Rock v. Abrashin*, 154 Wash. 51, 53, 280 P. 740, 741 (1929) ("the abuse of legal process consists of the malicious perversion of a regularly issued process whereby a result is obtained").

[57] *Gem Trading Co. v. Cudahy Corp*., 92 Wash.2d 956, 963 n.2, 603 P.2d 828, 832–33 (1979).

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

itself all show that there was no legal process issued during the investigation. DSHS does not deny that Ms. Chiat's actions could have resulted in a need to seek judicial intervention, but that possibility alone is not enough to support Ms. Chiat's remaining claim. Ms. Chiat's claim for abuse of process should be dismissed on this ground alone.

**C. Ms. Chiat's claim for abuse of process fails on the remaining elements of the tort.**

**1. There was no improper objective during the April 2015 investigation.**

Abuse of process claims are quite rare because legal process must be used for an improper objective.[58] If the objective of the legal process is simply the same as would otherwise be obtained, the tort cannot exist.[59] In *Rock v. Abrashin*, the Washington Supreme Court offered an example of a situation constituting abuse of process.[60] It explained that if a judgment creditor used the judicial system to sequester wages and property that the creditor knew was legally unattachable, for the improper purpose of inducing the debtor to pay the outstanding debt with property that was not legally subject to execution, the creditor would have engaged in the tort.[61] In this case, not only was Ms. Chiat not subjected to legal process, she cannot identify any instance when a quid pro quo was either requested of her or conferred by her. For that reason, she cannot satisfy the second legal element of the claim.

**2. Ms. Chiat was not damaged in the April 2015 investigation.**

Ms. Chiat has no damages. A plaintiff must "prove damages as an element of the claim for abuse of process."[62] However, Ms. Chiat did not have to hire an attorney to defend against the CPS investigation or to secure its voluntary closure; her public defender assisted her during

[58] *Gilmore v. Thwing*, 167 Wash. 457, 459, 9 P.2d 775, 776 (1932) (distinguishing abuse of process from malicious prosecution)

[59] *Id.*

[60] 154 Wash. 51, 280 P. 740 (1929); *see also Vargas Ramirez*, 93 F. Supp. 3d 1207, 1232–33 (abuse of process claim failed because plaintiff could not show a misuse of the immigration process that occurred "after the initiation of the legal proceeding" against him).

[61] *Rock*, 154 Wash. at 53, 280 P. 740.

[62] *Bellevue Farm Owners Ass'n*, 198 Wn. App. at 480, 394 P.3d at 1026.

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

the CPS interview.[63] Accordingly, Ms. Chiat's claim for abuse of process fails on the third element, as well.

## IV. CONCLUSION

Ms. Chiat's remaining claim should be dismissed with prejudice because she was not subjected to legal process, she has no evidence of any improper purpose in the institution of the CPS investigation and she suffered no damages. No amount of discovery can cure these defects in Ms. Chiat's remaining claim.

DATED this 6th day of August, 2020.

ROBERT W. FERGUSON
Attorney General

*/s/ A. Janay Ferguson*
A. JANAY FERGUSON, WSBA No. 31246
Assistant Attorney General
Office of the Attorney General – Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 464-7352
Fax: (206) 587-4229
E-mail: Janay.Ferguson@atg.wa.gov

[63] Ex. 3, pp. 24-25 (Chiat Ans. Interrog. No. 6, pp. 16:25—17:22).

DSHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIM
NO. 2:18-cv-01142-RSL

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system. The foregoing document was sent for service on all other parties as follows by email and US Mail, Postage Prepaid:

Ms. Heidi Chiat
14500 NE 29th Place, #319
Bellevue, WA 98007
hmchiat@gmail.com

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated this 6th day of August, 2020 in Seattle, Washington.

*/s/ A. Janay Ferguson*
A. Janay Ferguson, WSBA No. 31246

DSHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIM
NO. 2:18-cv-01142-RSL

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352